IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED
MAR 2 5 2009
JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

| | |
|---|---|
| GERALD M. BOTKIN, | ) |
| Plaintiff, | ) Civil Action No. 5:08CV00058 |
| v. | ) **MEMORANDUM OPINION** |
| RANDALL FISHER and J. F. BRYANT, | ) By: Hon. Glen E. Conrad |
| | ) United States District Judge |
| Defendants. | ) |

The plaintiff, Gerald M. Botkin, filed this civil rights action against Randall Fisher, the Sheriff of Augusta County, and J. F. Bryant, one of the Sheriff's deputies, asserting claims under 42 U.S.C. § 1983 and Virginia law. Both defendants have filed partial motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The case is presently before the court on the defendants' motions. For the reasons that follow, Deputy Bryant's partial motion to dismiss will granted in part and denied in part, and Sheriff Fisher's partial motion to dismiss will be granted.

## Background

The following facts, which are taken from the complaint, are accepted as true for purposes of the defendants' motions. See Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

Botkin is a 66-year-old resident of Augusta County, Virginia. On October 23, 2007, Botkin leaned out of a window on the second floor of his home, and fired a gun at a rodent that had entered a trap in his backyard. The gunshot was heard by "an individual named Myers," who was sitting on his deck in a neighborhood across a "green space gulley" from Botkin's home. (Compl. at 4-5). Myers "was feeling a little nervous due to strained relations with his daughter's

[e]x-boyfriend who had just been released from jail or prison." (Compl. at 4). According to Botkin, "Myers had allegedly had words with the boy and may have obtained a protective order." (Compl. at 4). Consequently, upon hearing the gunshots, Myers

> . . . immediately and mistakenly concluded that the [e]x-boyfriend must be hiding in the green space gulley shooting at him, so he ran inside his house. Once inside the shooting stopped, so [Myers] jumped to the erroneous[] conclusion that the [e]x-boyfriend couldn't see him and stopped shooting. Myers called 911 to report that he was being shot at and the local sheriff's deputies responded to his neighborhood.

(Compl. at 4-5).

While Deputy Bryant and other deputies were searching for the individual described by Myers, Botkin walked outside to see if the rodent in the trap was still alive. Botkin subsequently fired his gun into the trap, killing the rodent. Upon hearing this additional gunshot, the deputies "left Myer's neighborhood and ran the approximate length of three football fields, down the green space gulley and up the other side to the surprise of Botkin who was standing in his backyard with the wind blowing in his ears." (Compl. at 5). Although Botkin "was obviously not a young buck" and "look[ed] more like an Amish elder," the deputies yelled at him and pointed their rifles at his chest.[1] (Compl. at 5).

Botkin was initially unable to hear the deputies, due to the wind and the distance between him and the deputies. However, once he was able to hear the deputies, Botkin promptly removed the clip from the gun, "which had remained pointed at the ground the entire time," and placed the

---

[1] In the complaint, Botkin describes himself as "a slightly overweight out-of-shape bald headed man with a white beard." (Compl. at 5).

2

Case 5:08-cv-00058-GEC-BWC  Document 26  Filed 03/25/09  Page 2 of 15  Pageid#: 148

gun on the ground, in accordance with the officers' instructions. (Compl. at 5). Botkin also followed further instructions to lie down on the ground.

Botkin alleges that despite the fact that he did not attempt to resist the deputies, and the fact that the rodent "lay dead and still warm," the deputies handcuffed his hands behind his back while he was face-down on the ground, and "arrested [him] without a warrant for alleged misdemeanors not committed in [their] presence and charged him with reckless use of a firearm in violation of [Virginia Code] § 18.2-56.1 and obstruction of justice in violation of [Virginia Code] § 18.2-460(A)." (Compl. at 6). Botkin further alleges that the deputies interrogated him following his arrest; that they performed a warrantless search of his residence; and that they took him to the Sheriff's office, where he was "booked, fingerprinted, and eventually released later that day." (Compl. at 7).

Based on the foregoing allegations, Botkin asserts the following claims against the defendants under 42 U.S.C. § 1983[2] and Virginia law: "unconstitutional deprivation of freedom" (Count I); "unconstitutional search" (Count II); "declaratory judgment" (Count III); "false imprisonment" (Count IV); "violation of Virginia Constitution" (Count V); and "assault and battery" (Count VI). Botkin seeks monetary damages, as well as declaratory and injunctive relief.

---

[2] Section 1983 imposes civil liability on any person acting under color of state law to deprive another person of rights and privileges secured by the Constitution and laws of the United States. 42 U.S.C. § 1983.

3

## Standard of Review

The case is presently before the court on the defendants' partial motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. To withstand a Rule 12(b)(6) motion, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level," and the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). When ruling on a Rule 12(b)(6) motion, the court must "accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (internal citations omitted). The court is "not required, however, to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (internal citation and quotation marks omitted).

## Discussion

### I. Deputy Bryant's Partial Motion to Dismiss

Deputy Bryant has moved to dismiss Botkin's unlawful arrest claim under § 1983 (Count I), as well as Botkin's claims under Virginia law (Counts IV, V, and VI). The court will address each of these claims in turn.

#### A. Count I

In Count I, Botkin alleges that he was "arrested without a warrant and without probable cause" by Deputy Bryant, in violation of his rights under the Fourth Amendment to the United States Constitution. (Compl. at 13). In moving to dismiss this claim, Deputy Bryant argues that

4

it is clear from the facts alleged in the complaint that the deputies had probable cause for Botkin's warrantless arrest. For the reasons explained below, however, the court disagrees.[3]

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A warrantless arrest is unreasonable under the Fourth Amendment unless the arresting officer has probable cause to believe that a criminal offense has been or is being committed. Devenpeck v. Alford, 543 U.S. 146, 152 (2004). Probable cause is determined from the totality of the circumstances known to a law enforcement officer at the time of the arrest. Taylor v. Waters, 81 F.3d 429, 434 (4th Cir. 1996). For probable cause to exist, the facts and circumstances within the officer's knowledge must be "sufficient to warrant a prudent person, or one of reasonable

---

[3] The court notes that, because Botkin emphasized in his complaint that he was "arrested . . . without a warrant for alleged misdemeanors not committed in [the deputies'] presence" (Compl. at 6), Deputy Bryant construed the complaint to assert that the Fourth Amendment contains an "in the presence" requirement for misdemeanor arrests. See Atwater v. City of Lago Vista, 532 U.S. 318, 341 n.11 (2001) (declining to decide "whether the Fourth Amendment entails an 'in the presence' requirement for purposes of misdemeanor arrests"). In Botkin's brief in opposition to Deputy Bryant's motion, however, Botkin suggests that Deputy Bryant misconstrued Count I, and emphasizes that "the issue in the First Claim for Relief is whether the officer had probable cause to arrest [him] . . . ." (Pl.'s Br. in Opp. to Bryant's Mot. at 8). Likewise, in his brief in opposition to Sheriff Fisher's motion, Botkin states that "[t]he issue for the warrantless arrest under the United States Constitution is whether there is probable cause . . . to believe an offense is being or has been committed by the arrested individual" (Pl.'s Br. in Opp. to Fisher's Mot. at 15), and that "whether or not a misdemeanor was committed in the presence of the officer is not relevant to the issue of whether or not the arrest and search violated the United States Constitution, as opposed to merely violating Virginia law" (Pl.'s Br. in Opp. to Fisher's Mot. at 14); see, e.g., Figg v. Schroeder, 312 F.3d 625, 638 (4th Cir. 2002) (noting that, under Virginia law, "'an arrest, though warrantless, is valid where the officer had probable cause to believe that a misdemeanor was committed in his presence'") (quoting Yeatts v. Minton, 177 S.E.2d 646, 648 (Va. 1973)); Penn v. Commonwealth, 412 S.E.2d 189, 190 (Va. Ct. App. 1991) ("A police officer may make a warrantless arrest for a misdemeanor if the offense is committed in the officer's presence.") (citing Va. Code § 19.2-81). Consequently, for purposes of the instant motion, the court will restrict its inquiry to whether Botkin has alleged sufficient facts to establish that he was arrested without probable cause in violation of the Fourth Amendment. In so doing, the court will consider the totality of the circumstances known to Deputy Bryant, as alleged in the complaint. See Taylor v. Waters, 81 F.3d 429, 434 (4th Cir. 1996).

5

caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir. 1998); see also United States v. Humphries, 372 F.3d 653, 657-658 (4th Cir. 2004) ("Stripped to its essence, the question to be answered is whether an objectively reasonable police officer, placed in the circumstances, had a 'reasonable ground for belief of guilt' that was 'particularized with respect to the person to be . . . seized.'") (quoting Maryland v. Pringle, 540 U.S. 366, 372-373 (2003)).

In this case, Botkin was arrested and charged with reckless handling of a firearm, in violation of Virginia Code § 18.2-56.1, and obstruction of justice, in violation of Virginia Code § 18.2-460(A). The firearm statute makes it a misdemeanor to "recklessly handle any firearm so as to endanger the life, limb or property of any person." Va. Code § 18.2-56.1(A). Under the obstruction statute, "a person may neither (1) 'without just cause knowingly obstruct[] . . . any law-enforcement officer in the performance of his duties as such,' nor (2) 'fail[] or refuse[] without just cause to cease such obstruction when requested to do so by such . . . law-enforcement officer.'" Wilson v. Kittoe, 337 F.3d 392, 398 (4th Cir. 2003) (quoting Va. Code § 18.2-460(A)).[4]

Viewing the allegations in the complaint in the light most favorable to Botkin, the court is unable to conclude, at this stage of the litigation, that the deputies had probable cause to arrest Botkin for reckless use of a firearm. While Deputy Bryant emphasizes that Botkin alleges that

---

[4] The court notes that Virginia courts have defined obstruction in a "stringent" manner, Wilson, 337 F.3d at 399, emphasizing that "obstruction of justice does not occur when a person fails to cooperate fully with an officer or when the person's conduct renders the officer's task more difficult but does not impede or prevent the officer from performing that task," Ruckman v. Commonwealth, 505 S.E.2d 388, 389 (Va. Ct. App. 1998). See Id. (stating, as an example, that "an accused's hiding or seeking to escape [an] officer by merely running away [is] not such an obstruction as the law contemplates").

6

Case 5:08-cv-00058-GEC-BWC   Document 26   Filed 03/25/09   Page 6 of 15   Pageid#: 152

the deputies heard a gunshot after they responded to Myers' 911 call, and that they subsequently observed Botkin holding a gun, the complaint indicates that Botkin did not match the description of the individual identified by Myers, that Botkin lived approximately 300 yards from Myers' house, that Botkin had obviously just used his gun to shoot a rodent in his backyard, and that his gun remained pointed toward the ground the entire time.

Likewise, the court concludes that the facts alleged by Botkin do not inescapably establish that the deputies had probable cause to arrest Botkin for obstruction of justice. Botkin acknowledges that he was initially unable to hear the deputies due to the wind and the initial distance between him and the deputies. However, he alleges that upon comprehending what the deputies were yelling, he "promptly followed their instructions, removed the clip and placed the pistol on the ground and then followed further instructions to lay down on the ground as well." (Compl. at 6). Botkin further alleges that "at no time did his acts indicate an intention . . . to oppose or resist the deputies." (Compl. at 6).

Based on the foregoing allegations, the court is unable to conclude, at this stage of the litigation, that the deputies had probable cause for Botkin's warrantless arrest. Accordingly, Deputy Bryant's motion to dismiss will be denied with respect to Count I.

### B. Counts IV and VI

In Counts IV and VI, Botkin asserts supplemental tort claims under Virginia law. Specifically, in Count IV, Botkin asserts a claim for false imprisonment, and in Count VI, Botkin asserts claims for assault and battery.

Deputy Bryant has moved to dismiss Counts IV and VI on the basis that Botkin's arrest was lawful. See, e.g., Cole v. Eckerd Corp., 54 Va. Cir. 269, 273 (Va. Cir. Ct. 2000) ("No action

7

for false imprisonment may lie when the arrest is lawful.") (citing Yeatts v. Minton, 177 S.E.2d 646 (1970)); Virginia Model Jury Instructions - Civil, Instr. No. 36.030 (2007) ("An officer has the right to use reasonable force to make a lawful arrest. Use of that force is not an assault or battery."). However, for the reasons discussed with respect to Count I, the court concludes that Botkin has alleged sufficient facts to permit these state tort claims to go forward at this stage of the litigation. Accordingly, Deputy Bryant's motion will be denied as to Counts IV and VI.

### C. Count V

In Count V, Botkin seeks recovery for alleged violations of the Constitution of Virginia. Specifically, Botkin alleges that the defendants violated Article I, § 10, dealing with "general warrants," and the portion of Article I, § 11, which provides that "no person shall be deprived of . . . liberty . . . without due process of law."[5]

---

[5] Article I, § 10 provides as follows:

> That general warrants, whereby an officer or messenger may be commanded to search suspected places without evidence of a fact committed, or to seize any person or persons not named, or whose offense is not particularly described and supported by evidence, are grievous and oppressive, and ought not to be granted.

Article I, § 11 provides, in pertinent part, as follows:

> That no person shall be deprived of his life, liberty, or property without due process of law; that the General Assembly shall not pass any law impairing the obligation of contracts, nor any law whereby private property shall be taken or damaged for public uses, without just compensation, the term "public uses" to be defined by the General Assembly; and that the right to be free from any governmental discrimination upon the basis of religious conviction, race, color, sex, or national origin shall not be abridged, except that the mere separation of the sexes shall not be considered discrimination.

8

The Supreme Court of Virginia has made clear that the provisions of the Constitution of Virginia do not provide a basis for a private cause of action unless they are self-executing. See Robb v. Shockoe Slip Found., 324 S.E.2d 674, 676 (Va. 1985). In Robb, the Supreme Court noted that constitutional provisions are self-executing when they expressly so declare. Id. at 676 (citing Va. Const. art. I, § 8). Additionally, the Court explained that, "[e]ven without the benefit of such a declaration, constitutional provisions in bills of rights and those merely declaratory of common law are usually considered self-executing," as are "provisions which specifically prohibit particular conduct." Id. The Court further explained that "[a] constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be employed and protected, or the duty imposed may be enforced." Id. (internal citations omitted). However, a constitutional provision is not self-executing if "it merely indicates principles, without laying down rules by means of which those principles may be given the force of law." Id. (internal citations omitted).

Applying these principles, courts have consistently held that Article I, § 10, pertaining to general warrants, is not self-executing. As the United States District Court for the Eastern District of Virginia explained in Muniz v. Fairfax County, 2005 U.S. Dist. LEXIS 43024 (E.D. Va. Nov. 14, 2005), this provision of the Constitution of Virginia "does not 'suppl[y] a sufficient rule by means of which the right given may be employed an protected.'" Muniz, 2005 U.S. Dist LEXIS 43024, at *4 (quoting Robb, 324 S.E.2d at 676). Instead, the provision merely sets forth the principle that general warrants are oppressive and grievous, "'without laying down rules by means of which those principles may be given the force of law.'" Id. (quoting Robb, supra); see also Chandler v. Routin, 63 Va. Cir. 139, 141 (Va. Cir. Ct. 2003) (holding that Article I, § 10 is

not self-executing and does not provide the basis for a private cause of action); Young v. City of Norfolk, 62 Va. Cir. 307, 312 (Va. Cir. Ct. 2003) (same).

Additionally, the only portion of Article I, § 11 that has been held to be self-executing is that which applies to private property "taken or damaged for public use, without just compensation." Va. Const. art. I, § 11; see, e.g., Kitchen v. City of Newport News, 657 S.E.2d 132, 392 (Va. 2008) (noting that the portion of Article I, § 11 that pertains to the taking of private property "is self-executing and permits a property owner to enforce his constitutional right to just compensation in a common law action") (internal citation and quotation marks omitted). Virginia courts have repeatedly rejected the assertion that a private right of action exists under Article I, § 11 for the deprivation of life or liberty. See Gray v. Rhoads, 55 Va. Cir. 362, 368 (Va. Cir. Ct. 2001), rev'd on other grounds, 597 S.E.2d 93 (Va. 2004) (emphasizing that the portion of Article I, § 11 that pertains to the deprivation of property specifically includes a remedy for takings of property by a governmental entity (just compensation), and reasoning that "[i]f the drafters had intended to provide similar rights and remedies for deprivation of life and liberty, they could have done so by including such language in that provision"); see also Chandler, 63 Va. Cir. at 141 (rejecting the plaintiff's claim for deprivation of liberty under Article I, § 11); Young, 62 Va. Cir. at 312 (same).

Based on the foregoing case law, and in the absence of any authority to the contrary, the court concludes that Botkin has failed to state a cognizable claim under either provision of the Constitution of Virginia. Accordingly, Deputy Bryant's motion will be granted with respect to Count V.

10

## II. Sheriff Fisher's Partial Motion to Dismiss

In addition to challenging the merits of Botkin's claims under the Constitution of Virginia,[6] Sheriff Fisher has moved to dismiss the claims that are asserted against him under § 1983. For the following reasons, the court will grant Sheriff Fisher's motion.

Botkin has asserted claims against Sheriff Fisher in his official capacity as Sheriff of Augusta County and in his individual capacity as Deputy Bryant's supervisor. To the extent Botkin has sued Sheriff Fisher in his official capacity under § 1983, Botkin's claims for monetary damages are barred by the Eleventh Amendment. In Virginia, suits against a Sheriff in his official capacity are suits against the state. See Harris v. Hayter, 970 F. Supp. 500, 502 (W.D. Va. 1997); Blankenship v. Warren County, 931 F. Supp. 447, 449 (W.D. Va. 1996). The Eleventh Amendment bars actions for monetary damages against a state by its own citizens, unless Congress has validly abrogated that immunity or the state, itself, has consented to suit. Edelman v. Jordan, 415 U.S. 651, 662-663 (1974). Because there is no indication of any abrogation or waiver of immunity in this case, Fisher, in his official capacity as Sheriff of Augusta County, is immune from liability for damages under § 1983.

Additionally, while the Eleventh Amendment may not bar Botkin's official capacity claims for declaratory and injunctive relief, see Ex Parte Young, 209 U.S. 123, 159-160 (1908), the court nonetheless concludes that these claims are subject to dismissal under Rule 12(b)(6). Claims against a government officer in his official capacity are treated as claims against the government entity for which the officer was acting. Stevenson v. Martin County Bd. of Educ., 3

---

[6] For the reasons stated above, the court agrees with Sheriff Fisher that Botkin has failed to state a cognizable claim under the Constitution of Virginia. According, Sheriff Fisher's motion will be granted with respect to Count V.

11

F. App'x 25, 29 (4th Cir. 2001) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)). Government entities are liable "only if an official's execution of a municipal policy, practice, or custom caused the injury." Id. (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)).

In this case, the only allegation in the complaint concerning Sheriff Fisher is that Fisher and his deputies had a "policy or custom of . . . arrest[ing] individuals for alleged crimes including misdemeanors not committed in their presence without a warrant." (Compl. at 3). In his response to Sheriff Fisher's motion, however, Botkin states that this allegation is "relevant to the need for injunctive relief and a declaratory judgment that such practice violates Virginia law," and that "whether or not a misdemeanor was committed in the presence of the officer[s] is not relevant to the issue of whether or not the arrest and search violated the United States Constitution." (Pl.'s Br. in Opp. to Fisher's Mot. at 14) (emphasis added). While Botkin goes on to argue that the complaint could be "read to reasonably infer" that Sheriff Fisher had a policy or custom that permitted deputies to arrest individuals without probable cause in violation of the Fourth Amendment (Pl.'s Br. in Opp. to Fisher's Mot. at 14-15), this argument is without merit. As previously stated, a court is not required to accept unwarranted deductions of fact when ruling on a Rule 12(b)(6) motion, Veney, 293 F.3d at 730, and it is "well-settled that a complaint cannot be amended by the plaintiff's brief[] in opposition to a motion to dismiss," Bessinger v. Food Lion, Inc., 305 F. Supp. 2d 574, 581 (D. S.C. 2003). Accordingly, Botkin's § 1983 claims against Sheriff Fisher in his official capacity must be dismissed.

To the extent Sheriff Fisher has been sued in his individual capacity under § 1983, the complaint sets forth no facts indicating that Sheriff Fisher had any direct involvement in the events that occurred on October 23, 2007, and it is well established that a sheriff cannot be held

12

vicariously liable under § 1983 for his subordinates' actions. See Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1142 (4th Cir. 1982) (holding that the Sheriff of Arlington County, Virginia could not "be held liable vicariously under § 1983 for any conduct of his subordinates"); McDonald v. Dunning, 760 F. Supp. 1156, 1170 (E.D. Va. 1991) ("The sheriff in his individual capacity may not be held vicariously liable under § 1983 for the constitutional torts of subordinates in which he was not directly involved.").[7] Instead, to state a claim against Sheriff Fisher in his individual capacity under § 1983, Botkin must allege sufficient facts to satisfy the test for supervisory liability enunciated in Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994). See Mikkelsen v. DeWitt, 141 F. App'x 88, 91 (4th Cir. 2005) ("[A]s our precedent makes clear, to hold [Sheriff]DeWitt responsible [in his individual capacity] for Broughton's behavior, DeWitt's conduct must meet the test for 'supervisory liability.'" And our analysis on that question is guided by the test enunciated in Shaw . . . ."); Randall v. Prince George's County, 302 F.3d 188, 206 (4th Cir. 2002) (applying the test set forth in Shaw to determine whether a police lieutenant was subject to supervisory liability under § 1983). Under this test, a plaintiff must show:

---

[7] Relying on Whited v. Fields, 581 F. Supp. 1444 (W.D. Va. 1984), Botkin contends that Sheriff Fisher may be held personally liable for the § 1983 violations of his deputies without showing any direct involvement on the part of Fisher. See Whited, 581 F. Supp. at 1454-1456 (stating, in dicta, in the context of a political patronage case, that a "sheriff [is] liable civilly for the acts of his deputy in Virginia," and that "a § 1983 case does not insulate the sheriff in Virginia"). Botkin's contention, however, is without merit. As the United States District Court for the Eastern District of Virginia explained in McDonald, supra, any suggestion in Whited, that a Virginia sheriff may be held vicariously liable under § 1983 for the constitutional torts of his deputies, has been invalidated by subsequent decisions by the Fourth Circuit holding that sheriffs are not subject to vicarious liability under § 1983. McDonald, 760 F. Supp. at 1169; see, e.g., Strickler v. Waters, 989 F.2d 1375, 1387 (4th Cir. 1993) (holding that a sheriff "cannot be held vicariously liable for any conduct of his subordinates" under § 1983); Fisher, 690 F.2d at 1142 (same).

13

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw, 13 F.3d at 799 (internal quotation marks omitted).

Applying this test, the court concludes that Botkin's factual allegations are clearly insufficient to state a claim against Sheriff Fisher in his individual capacity. Botkin's complaint does not include any allegations that would suggest that Sheriff Fisher had actual or constructive knowledge that his subordinates were engaged in conduct that posed a pervasive risk of constitutional injury, that Fisher responded in a deliberately indifferent manner, or that any link existed between his inaction and the constitutional injuries purportedly suffered by Botkin. See Id. Consequently, Botkin's § 1983 claims against Sheriff Fisher in his individual capacity must also be dismissed.

## Conclusion

For the reasons stated, Deputy Bryant's partial motion to dismiss will be granted in part and denied in part, and Sheriff Fisher's partial motion to dismiss will be granted.[8]

---

[8] To the extent that the plaintiff's remaining allegations against Sheriff Fisher arguably state a claim against him under Virginia law, and inasmuch as the court views such claims and those asserted against Deputy Bryant as sufficiently intertwined, the court will retain supplemental jurisdiction over the remaining state claims insofar as they may pertain to Sheriff Fisher.

14

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 25th day of March, 2009.

/s/ Glen E. Conrad
United States District Judge