CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

JUL 1 6 2009

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

GERALD M. BOTKIN,                )
                                 )
        Plaintiff,               )        Civil Action No. 5:08CV00058
                                 )
v.                               )        **MEMORANDUM OPINION**
                                 )
RANDALL FISHER, et al.,          )        By: Hon. Glen E. Conrad
                                 )        United States District Judge
        Defendants.              )

The plaintiff, Gerald M. Botkin, filed this civil rights action against Randall Fisher, the

Sheriff of Augusta County, and J. F. Bryant, one of the Sheriff's deputies, asserting claims under

42 U.S.C. § 1983 and Virginia law. The case is presently before the court on the defendants'

motion for summary judgment. For the reasons that follow, the defendants' motion will be

granted in part and denied in part.

### Factual Background

The following facts are presented in the light most favorable to the plaintiff. See

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (noting that "all evidence must be

construed in the light most favorable to the party opposing summary judgment").

On October 23, 2007, at approximately 10:00 a.m., Timothy W. Myers called 911 and

reported that someone had shot at him while he was sitting on the back deck of his house.

Myers' daughter's ex-boyfriend had recently been released from jail, and Myers was afraid that

the ex-boyfriend was shooting at him.

Deputy Bryant and other deputies were dispatched to Myers' house, which is located in a

populated residential subdivision near the Route 262 bypass in Augusta County. Upon arriving,

Bryant made contact with Myers and his wife, Tammy. Myers told Bryant that rounds had gone over his house and that he did not know if any of the rounds had hit his house. Myers described the ricochet sound that he had heard and stated that he believed the shots had been fired at him. Myers also conveyed his fears regarding his daughter's ex-boyfriend.

Deputy Bryant and the other deputies proceeded into Myers' backyard to investigate. While they were canvassing the area and working their way toward the houses behind Myers' residence, the officers heard another gunshot. Looking into the direction from which Deputy Bryant heard the gunshot, Bryant saw a man wearing an "olive drab" shirt. (Bryant Aff. at para. 4). The man turned out to be the plaintiff, Gerald Botkin, whose house is located in a neighborhood directly behind the Myers' house.

Deputy Bryant and the other deputies ran toward Botkin so that they would not lose sight of him. At that point, Botkin turned in the direction of the deputies and started walking toward them. Peering through the scope on his rifle, Deputy Bryant saw what appeared to be a "ruger style" pistol in Botkin's hand. (Bryant Aff. at para. 4).

The deputies pointed their weapons at Botkin and ordered him to drop the pistol.[1] Although the deputies identified themselves as law enforcement officers and were wearing badges and uniforms, Botkin did not immediately comply with the deputies' orders. Given Botkin's initial noncompliance, Deputy Bryant viewed Botkin as a "serious threat" and "was prepared to fire upon him if he did not comply with [Bryant's] orders." (Bryant Aff. at para. 5).

Botkin alleges that he was unable to hear the deputies because he suffers from hearing loss, the wind was blowing, and the deputies were "screaming at the same time . . . all the while

---

[1] It is undisputed that the pistol was, at all relevant times, aimed toward the ground.

pointing firearms at [him]." (Botkin Aff. at para. 8). Once Botkin comprehended what the deputies were shouting, Botkin "removed the clip, and removed the round in the chamber and placed the pistol on the ground, all within a space of about 7-10 seconds." (Botkin Aff. at para. 8). Botkin then laid face down on the ground, as the deputies instructed, and one of the deputies placed a knee on Botkin's back and handcuffed Botkin's hands behind his back.

Upon questioning, Botkin advised the deputies that he was the person who had previously fired a rifle, and that he was merely attempting to kill a possum that had entered a trap in his yard. Botkin told the deputies that he initially shot at the trapped possum three times with a rifle from his second story window, and that, because he thought that the possum might be "playing dead," Botkin walked over to the trap and shot the possum with his pistol. (Botkin Aff. at para. 27). Botkin emphasized that shooting the possum was legal, since he lives in the county, and he repeatedly asked the deputies to examine the possum in the trap.

Although Botkin now alleges that the shots were fired "into the ground with a thick backstop of trees and vegetation" (Botkin Aff. at para. 39), Deputy Bryant avers that he believed that Botkin had acted in an unsafe manner:

> Plaintiff admitted that he was shooting from his second story window toward a caged possum, which in my opinion, was in the general direction of the heavily trafficked roadway, Route 262. Furthermore, Plaintiff's house was located in a neighborhood immediately behind the Myers' neighborhood with only a pond and some foliage between the two houses. Plaintiff's subdivision and the Myers' subdivision were populated subdivisions.

> Even if Plaintiff was aiming at the possum in the cage, a round could easily ricochet off the cage or the ground toward Route 262 or toward the neighborhood. Moreover, based upon Tim Myers' report to us, it appeared that one or more of Plaintiff's

3

> shots either were fired toward Mr. Myers' house or ricocheted
> towards Mr. Myers' house.

(Bryant Aff. at para. 8-9). Based on the foregoing, Deputy Bryant believed "that there was probable cause to arrest Plaintiff for the reckless handling of a firearm, and obstruction of justice, for his failure to initially follow [the officers'] orders to drop his weapon."[2] (Bryant Aff. at para. 9).

Deputy Bryant called the magistrate from the scene to "test probable cause," and the magistrate "informed [Bryant] that probable cause had been met." (Bryant Aff. at para. 11). Consequently, Deputy Bryant "placed Botkin under arrest and took him before the magistrate, who formally found probable cause and issued two warrants: one for reckless handling of a firearm, and one for obstruction of justice."[3] (Bryant Aff. at 11). Botkin was "booked, fingerprinted, and eventually released later that day with [his] firearms returned to [him] at that time." (Botkin Aff. At 5).

Botkin entered pleas of not guilty in a subsequent criminal proceeding before Augusta County General District Judge Lee McGratty. After hearing the Commonwealth's evidence, the judge decided as follows:

> I'm not sure that this man really understood that there was a deputy
> with a rifle pointed at him, saying drop the gun. Alright. What I
> want to do is I want to underline this in this man's mind, without

---

[2] It is undisputed that, once Botkin put down his weapon, he fully complied with the officers' orders. See, e.g., Deposition of Thomas C. Pultz at 46 (affirming that Botkin complied with the officers' instructions "from the point in time that Mr. Botkin placed the gun on the ground, continuing everytime that [Pultz] could observe Mr. Botkin"); Deposition of Arthur Blackwell at 31-32 (affirming that Botkin obeyed "each and every command given to him by an officer" after Botkin put down his weapon).

[3] Both offenses are Class 1 misdemeanors under Virginia law. See Va. Code § 18.2-56.1 (reckless handling of a firearm); Va. Code § 18.2-460 (obstruction of justice).

4

giving him a criminal conviction. Alright. What I'm going to do is this. (inaudible) Note evidence sufficient. Let's take it under advisement for 60 days, to give him enough time to do . . . 25 hours of community service, supervised by the Blue Ridge Court Services with it to be dismissed upon completion. Now, I notice on this thing that you are in a rural area, on the other hand, in close proximity to you is a road, major road, and a subdivision. You better be careful if you ever discharge your gun out there again. Understand me? Cause somebody could be hurt. I think this solves everything, He is not in trouble, but it is underlined in his mind that he's got to be a little more careful. He pays his court costs, and he can put the check up on his wall as a reminder.

(Hearing Tr. at 18). In an affidavit submitted by Deputy Bryant, Judge McGratty avers that he found the evidence sufficient to find the defendant guilty of both charges; that he took the cases under advisement for 60 days pending the completion of 25 hours of community service and the payment of court costs; and that the charges were dismissed after Botkin completed those requirements.

### **Procedural History**

On July 22, 2008, Botkin filed the instant civil rights action against Deputy Bryant and Augusta County Sheriff Randall Fisher. In his complaint, Botkin asserted the following claims: "unconstitutional deprivation of freedom" (Count I); "unconstitutional search" (Count II); "declaratory judgment" (Count III); "false imprisonment" under Virginia law (Count IV); "violation of Virginia Constitution" (Count V); and "assault and battery" under Virginia law (Count VI).

The defendants subsequently moved to dismiss the complaint for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. By opinion and order entered March 25, 2009, the defendants' motion was granted in

5

part and denied in part. Specifically, the court granted the defendants' motion with respect to the plaintiff's § 1983 claims against Sheriff Fisher and the plaintiff's claim for alleged violations of the Constitution of Virginia.

During discovery, Botkin learned that Deputy Bryant had not entered or searched his home on the date of his arrest. Consequently, Botkin filed a motion to withdraw his claim for "unconstitutional search" against Deputy Bryant (Count II), which was granted on June 23, 2009.

The case is presently before the court on the defendants' motion for summary judgment with respect to the remaining claims. The court held a hearing on the defendants' motion on July 10, 2009. The motion is now ripe for review.

## Standard of Review

An award of summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

6

**Discussion**

I.       **Plaintiff's Claim for Unlawful Arrest Under 42 U.S.C. § 1983**

Botkin's first claim is one for unlawful arrest under 42 U.S.C. § 1983, which imposes

civil liability on any person acting under color of state law to deprive another person of rights and

privileges secured by the Constitution and laws of the United States. Specifically, Botkin alleges

that Deputy Bryant violated his rights under the Fourth Amendment by arresting him "without a

warrant and without probable cause."[4]  (Compl. at 13).

In moving for summary judgment with respect to this claim, Deputy Bryant argues that he

is entitled to qualified immunity. "[G]overnment officials performing discretionary functions

generally are shielded from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have

known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  When a government official properly

asserts the defense of qualified immunity, he is entitled to summary judgment if either: (1) the

facts, taken in the light most favorable to the plaintiff, do not make out a violation of a

constitutional right; or (2) the right at issue was not clearly established at the time of the alleged

misconduct.  Henry v. Purnell, 501 F.3d 374, 377 (4th Cir. 2007) (citing Saucier v. Katz, 533

U.S. 194, 205 (2001)).  As it is within the court's discretion to decide which of these questions to

consider first, Pearson v. Callahan, ___ U.S. ___, 129 S. Ct. 808, 816 (2009), the court begins by

considering whether Deputy Bryant's conduct violated Botkin's rights under the Fourth

Amendment.

_____

       [4] Botkin expressly noted in his complaint that he is only challenging the legality of his
warrantless arrest, and that he is "not making a separate excessive force claim" under the Fourth
Amendment.  (Compl. at 7, n.6).

7

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. Under United States Supreme Court precedent, "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004). Probable cause exists if the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person . . . in the circumstances shown, [to conclude] that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFilippo, 443 U.S. 31, 37 (1979). While probable cause demands "more than mere suspicion, . . . evidence sufficient to convict is not required." Taylor v. Waters, 81 F.3d 429, 433 (4th Cir. 1996); see also Michigan v. DeFilippo, 433 U.S. at 36 ("The validity of the arrest does not depend on whether the suspect actually committed a crime.").

Based on the facts known to Deputy Bryant at the time he arrested Botkin, the court concludes that a reasonable officer would have had probable cause to believe that Botkin had committed a criminal offense. As indicated above, Virginia law makes it unlawful for a person to "handle recklessly any firearm so as to endanger the life, limb or property" of another person. Va. Code § 18.2-56.1(A). At the time of Botkin's arrest, Deputy Bryant had been told by an eyewitness, Timothy Myers, that rounds had gone over his house and that he was not sure if one of the rounds had hit his house. Myers described the ricochet sound to Deputy Bryant and reported that he believed the shots had been fired at him. While at the Myers' residence, Deputy Bryant heard a shot being fired and came upon Botkin with a pistol in his hand. Botkin did not drop the weapon until after repeated shouts and orders from the deputies. Botkin admitted to

8

being the shooter; he claimed that he had fired three shots toward a trap from a second story

window and that he had fired a fourth shot using his pistol at close range. It is undisputed that

the Myers' residence is in a populated subdivision behind Botkin's house, and that Botkin's

house is near a highly trafficked highway. Given such facts, a reasonable officer on the scene

would have had probable cause to believe that a criminal offense had been committed by Botkin

-- namely, a violation of Virginia Code § 18.2-56.1(A).[5] Consequently, Deputy Bryant is entitled

to qualified immunity with respect to Botkin's claim that he was arrested without probable cause

in violation of the Fourth Amendment.[6]

---

[5] Having concluded that Deputy Bryant had probable cause to arrest Botkin for reckless use of a firearm, the court need not decide whether Deputy Bryant also had probable cause to arrest Botkin for obstruction of justice. See Barry v. Fowler, 902 F.2d 770, 773 n.5 (9th Cir. 1990) (holding that an officer must have probable cause for at least one charge for an arrest to withstand a Fourth Amendment challenge); Edwards v. City of Philadelphia, 860 F.2d 568, 575-576 (3d Cir. 1988) (same) (citing Linn v. Garcia, 531 F.2d 855, 862 (8th Cir. 1976)).

[6] In Botkin's brief in opposition to the motion for summary judgment, Botkin asserted that "probable cause alone is not the only issue for determining reasonableness for purposes of the Fourth Amendment's prohibition against unreasonable seizures." (Botkin's Mem. at 18). Relying on the Supreme Court's decision in Atwater v. Lago Vista, 532 U.S. 318 (2001), Botkin argued that a misdemeanor must occur in an officer's presence in order for a warrantless arrest to satisfy the Fourth Amendment. Botkin, however, "overreads Atwater." Shultz v. Smith, 264 F. Supp. 2d 278, 280 (D. Md. 2003). In Atwater, the Supreme Court only ruled "that an arrest for a misdemeanor committed in an officer's presence satisfies constitutional requirements"; the Court "did not hold that an arrest for a misdemeanor committed outside an officer's presence does not meet constitutional requirements." Shultz, 264 F. Supp. 2d at 280. Indeed, the Supreme Court expressly declined to decide the issue of "whether the Fourth Amendment entails an 'in the presence' requirement for the purposes of misdemeanor arrests." Atwater, 532 U.S. at 340, n.11. Consequently, as Botkin conceded at the hearing on the instant motion, even assuming that the Fourth Amendment does entail such requirement, Deputy Bryant is clearly entitled to qualified immunity. "That defense is all the stronger because the Fourth Circuit has expressly held that warrantless arrests by police officers for misdemeanors committed outside of their presence . . . , do not violate the Fourth Amendment so long as the arrest is supported by probable cause." Shultz, 264 F. Supp. 2d at 280 (citing Street v. Surdyka, 492 F.2d 368, 371-372 (4th Cir. 1974)).

9

## II.     Plaintiff's State Tort Claims

In addition to his Fourth Amendment claim, Botkin has asserted supplemental state tort claims of false imprisonment, assault, and battery against Deputy Bryant and Sheriff Fisher.[7]  In Virginia, the tort of false imprisonment is defined as "the direct restraint by one person of the physical liberty of another without adequate legal justification."  Jordan v. Shands, 500 S.E.2d 215, 218 (Va. 1998) (internal citation and quotation marks omitted).  It is a "wrong akin to the wrongs of assault and battery."  Id. (internal citation and quotation marks omitted).  The Virginia Supreme Court has defined the tort of assault as "an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in that person's mind a reasonable apprehension of an imminent battery."  Koffman v. Garnett, 574 S.E.2d 258, 261 (Va. 2003).  The Court has defined the tort of battery as "an unwanted touching which is neither consented to, excused, nor justified."  Id.

As Botkin's state tort claims stem from his arrest, the defendants argue that they are entitled to summary judgment because the arrest was lawful.  See, e.g., Cole v. Eckerd Corp., 54 Va. Cir. 269, 273 (Va. Cir. Ct. 2000) ("No action for false imprisonment may lie when the arrest is lawful.") (citing Yeatts v. Minton, 177 S.E.2d 646 (1970); Virginia Model Jury Instructions - Civil, Instr. No. 36.030 (2007) ("An officer has the right to use reasonable force to make a lawful arrest.  Use of that force is not an assault or battery.").  In response, Botkin argues that even if Deputy Bryant had probable cause to believe that Botkin had committed a misdemeanor offense, Bryant was not authorized to make a full custodial arrest under Virginia law.

---

[7] Botkin's state tort claims against Sheriff Fisher are premised on a theory of vicarious liability, which is not challenged in the instant motion.  See, e.g., Miller v. Jones, 50 Va. (9 Gratt.) 584, 601-602 (Va. 1853) (Under Virginia law, sheriffs are liable for the acts of their deputies).

10

In Virginia, a sheriff's deputy generally "may arrest, without a warrant, any person who commits any crime in the presence of the officer." Va. Code § 19.2-81. However, when a person is detained for certain misdemeanor offenses, such as those with which Botkin was charged, a deputy is generally limited to issuing a summons for the offense. Pursuant to Virginia Code § 19.2-74, a deputy may not formally arrest a person for a Class 1 or Class 2 misdemeanor offense, unless the person detained "fail[s] or refuse[s] to discontinue the unlawful act" or "is reasonably believed by the arresting officer to be likely to cause harm to himself or to any other person." Va. Code § 19.2-74(A)(1). In the absence of such circumstances, a deputy must issue a summons and "forthwith release [the person] from custody." Id.

Viewing the record in the light most favorable to Botkin, the court concludes that reasonable minds could differ as to whether his formal custodial arrest was statutorily permissible under the circumstances. As previously stated, it is undisputed that Botkin fully complied with the deputies' orders after he was initially detained. While Deputy Bryant emphasizes that Botkin "insisted that he had a right to use his firearm" (Bryant Aff. at para. 10), both of the firearms that had been used by Botkin were confiscated by the deputies. Furthermore, while Botkin may have believed that his actions were lawful, there is no evidence to suggest that he gave any indication that he planned to continue the discharge of weapons. Nor is there any evidence suggesting that he had discharged the weapons on a regular basis or otherwise, prior to the day in question. Moreover, assuming the truth of Botkin's allegations, Botkin's sole reason for using the firearms on the day in question was to kill the possum that had entered his backyard, and Botkin contends that it was obvious that he had accomplished that objective. Based on the foregoing, the court is convinced that genuine issues of material fact exist as to

11

whether Botkin "refuse[d] to discontinue the unlawful act" and as to whether Deputy Bryant

"reasonably believed [that Botkin was] likely to cause harm to himself or to any other person."

Va. Code § 19.2-74(A)(1). Consequently, the issue of whether Botkin's custodial arrest was

authorized under Virginia law is one that should be decided by the jury.[8]

The court notes that the defendants have also asserted the doctrine of good faith immunity

as a defense to Botkin's state tort claims against Deputy Bryant. Unlike the federal doctrine of

qualified immunity, "Virginia's 'good faith' immunity does not spare a Virginia official the

burden of a jury trial." Figg v. Schroeder, 312 F.3d 625 n.15 (4th Cir. 2002). Thus, "while it is a

defense to unlawful imprisonment for an officer to allege and prove a good faith and reasonable

belief in the validity of an arrest, a plaintiff nonetheless remains entitled to a jury determination

of those issues." Id. Accordingly, the issue of whether Botkin is entitled to good faith immunity

must also be decided by the jury, and the defendant's motion for summary judgment will be

denied as to Botkin's state tort claims of false imprisonment, assault, and battery.

### III.     Plaintiff's Declaratory Judgment Claim

In Count III of the complaint, Botkin requested a declaratory judgment that the "conduct

of defendants [was] unconstitutional and in violation of Virginia law." (Compl. at 21). The

court agrees with the defendants that such claim is without merit.

As the defendants noted during the hearing on the instant motion, a party seeking a

declaratory judgment "must show a realistic threat of future harm." Goldstein v. Moatz, 364

F.3d 205, 219 n.17 (4th Cir. 2004) (citing City of Los Angeles v. Lyons, 461 U.S. 95, 104

---

[8] It is undisputed that a violation of Va. Code § 19.2-74 does not give rise to a Fourth
Amendment claim. See Virginia v. Moore, ___ U.S. ___, 128 S. Ct. 1598 (2008).

12

(1983)).  In this case, Botkin merely seeks a declaration that the defendants violated the law in the past; he does not attempt to establish that he will be subjected to the alleged misconduct in the future.  Accordingly, "even if defendants violated [Botkin's] rights in the past as he alleges, he is not entitled to a declaration to that effect."  Martin v. Keitel, 205 F. App'x 925, 928 (3d Cir. 2006); see also Trull v. Smolka, 2008 U.S. Dist. LEXIS 70233, at * 23-25 (E.D. Va. Sept. 18, 2008) (dismissing plaintiff's request for a declaratory judgment that the defendants' conduct violated the Virginia Constitution).  Thus, the court will grant the defendant's motion with respect to Botkin's declaratory judgment claim.

## Conclusion

For the reasons stated, the defendants' motion for summary judgment will be granted in part and denied in part.  The case will proceed to trial on the plaintiff's state tort claims of false imprisonment, assault, and battery.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This __16th__ day of July, 2009.

United States District Judge

13